OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant was indicted for various counts of murder in the second degree and related charges. The court submitted two counts of murder in the second degree, Penal Law § 125.25 (1) and (3), and one count of robbery in the first degree, Penal Law § 160.15 (3), to the jury. The jury acquitted the defendant of felony murder but convicted him of intentional murder and robbery in the first degree. The defense moves this court pursuant to CPL 330.30 (1) to set aside the verdict as to robbery in the first degree on the grounds that the evidence supporting this conviction is legally insufficient and that it is inconsistent with the acquittal of felony murder. The issues presented to the court are whether a defendant may be convicted of robbing a dead person and whether the verdicts rendered are inconsistent as a matter of law.
FINDINGS OF FACT
On November 9, 1992, David Schwartz was stabbed to death in a motel in Bronx County. The defendant was arrested on November 11, 1992. In oral and video statements which were introduced into evidence at trial, the defendant claimed that he stabbed Schwartz as a result of unwanted sexual advances but admitted taking Schwartz’s watch, wallet, credit cards and car keys subsequent to the stabbing. The victim’s widow testified that her husband always carried his large, bulky wallet in his back pants pocket. Joseph Savino, an expert medical legal investigator for the Chief Medical Examiner’s office, testified that upon arrival at the crime scene he observed Schwartz lying on his back with various tears and cuts *990 to both the front and back of his clothing. The cuts in the front of the jacket corresponded to the shirts worn by the victim and to the wounds to the front of the body. However, the back of the jacket did not contain any defects while the backs of each shirt bore cuts which corresponded to the wounds in the back of the victim’s body.
Dr. Jonathan Hayes, an expert forensic pathologist with the office of the Chief Medical Examiner, testified that during the autopsy he observed 27 stab wounds and cuts to the victim’s face, neck, shoulder, chest and back. Dr. Hayes indicated that nine of the stab wounds to the neck, chest and back were individually fatal. He testified that the deceased would have remained functional for approximately three to five minutes after suffering any one of the fatal injuries. Dr. Hayes further noted that Schwartz could not have been lying on his back when the wounds to the back were inflicted. Of course, the order of the wounds could not be determined.
At trial, the defendant testified that he first stabbed Schwartz in his neck and then in his body but was unaware of the total number of wounds he inflicted. At one point during the stabbing, Schwartz said, "Let’s talk.” The defendant testified that after the stabbing he removed the deceased’s wallet, credit cards and car keys from his pocket and then left the motel room. During cross-examination, the defendant was unable to recall whether Schwartz was still moving or whether he was alive or dead when the wallet was removed. Furthermore, the defendant failed to explain how he removed the wallet from Schwartz’s back pocket, if, as he claimed, Schwartz was lying on his back.
Pursuant to the request of the prosecutor and defense at a precharge conference, the court submitted to the jury the counts of intentional murder, felony murder and robbery in the first degree. The jury convicted the defendant of intentional murder and robbery in the first degree but acquitted the defendant of felony murder.
CONCLUSIONS OF LAW
CPL 330.30 (1) permits a court to set aside a verdict on "[a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal * * * as a matter of law by an appellate court.” In cases concerning proof of guilt, the court’s power is "limited to a determination that the trial evidence was not *991 legally sufficient to establish the defendant’s guilt of an offense of which he was convicted.” (People v Carter, 63 NY2d 530, 536 [1984]; see also, CPL 470.15 [4] [b]; 70.10 [1].)
Robbery is defined by Penal Law § 160.00 as follows:
"Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
"1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
"2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.”
The Court of Appeals recently concluded "that under this statute, a defendant must intend that the threatened or actual use of physical force have one of the enumerated consequences.” (People v Smith, 79 NY2d 309, 312 [1992].) That is, "a defendant must intend that the use of force will either compel a person to deliver up the property, or prevent resistance to the taking of the property.” (Supra, at 312 [emphasis added].) It is insufficient that the force employed produces either result if the result is unintended. The Court noted that proof of intent requires "evidence that, in using or threatening physical force, defendant’s 1conscious objective’ was either to compel his victim to deliver up the property or to prevent or overcome resistance to the taking.” (Supra, at 315 [emphasis added]; see also, Penal Law § 15.05 [1]; § 160.00 [1], [2]; People v Wilkins, 191 AD2d 215 [1st Dept 1993]; People v Kellam, 189 AD2d 1008, 1009 [3d Dept 1993].)
In convicting the defendant of robbery, the jury found that the People proved beyond a reasonable doubt that the defendant forcibly stole property from Schwartz. To determine whether the evidence is legally sufficient to establish the defendant’s guilt, this court must determine if the defendant can commit the crime of robbery in the first degree if the victim is in fact dead.[1] Of the 27 stab wounds Schwartz *992 suffered, nine wounds to the neck, chest, and back each individually was fatal and would have resulted in death within approximately three to five minutes. The medical investigator testified that the back of Schwartz’s jacket did not contain any cuts or tears. However, cuts were observed in the back of the deceased’s two shirts which corresponded to the wounds in his back. This evidence could fairly establish that the defendant stabbed Schwartz in the back while Schwartz’s jacket was over his head. The testimony of the widow indicated that the victim kept his wallet in his back pocket. Because neither the exact time of death nor the order of the wounds could be established with any reasonable degree of certainty, the People were unable to prove beyond a reasonable doubt that the victim was alive at the time the defendant forcibly stole the victim’s property.
The defendant’s lack of awareness of the victim’s condition does not preclude a finding that a robbery has occurred when the victim’s actual condition does not affect or alter the defendant’s intent. When force is used to prevent resistance to the taking of the property or to the retention thereof, only the defendant’s state of mind is relevant. Resistance on the part of the victim is either anticipated or it may actually occur.[2] However, actual resistance need not be established to prove a robbery. Only the intent of the defendant to use force to accomplish one of the enumerated consequences outlined in Penal Law § 160.00 must be proven. (See, People v Smith, supra.) The condition of the victim is irrelevant.
In People v Joyner (32 AD2d 260 [1st Dept 1969], revd 26 NY2d 106 [1970]), a felony murder and robbery prosecution, the defendant first stabbed the deceased and subsequently removed money from the corpse as it lay on the sidewalk. During its deliberations, the jury asked whether a robbery can be committed if money is taken from a dead man. The Trial Judge, the Honorable Irwin D. Davidson, instructed the jury that a robbery can be committed if money is forcibly taken from a dead man. (People v Joyner, 32 AD2d, at 261.) Although this issue was raised on appeal in a separate point by the defense, it was only addressed by the Appellate Division in *993 dicta and never addressed by the Court of Appeals in its reversal of the Appellate Division. Consequently, the issue remains one of first impression in this State.[3]
A reasonable view of the evidence in the instant case could establish that the intent to rob was formed by the defendant after the victim died but before the stabbing had ceased. Under these circumstances, although felony murder is not proven, a robbery may be established. The jury could have reasonably concluded that the defendant was unaware that Schwartz was already dead when he formed the intent to rob him and that he continued to stab Schwartz to obtain his property. The defendant’s mistaken belief that Schwartz was still alive is not a viable defense to robbery. (See, Penal Law § 15.20 [1] [a] [mistake of fact does not relieve a defendant of criminal liability unless the factual mistake negates the culpable mental state required for the commission of the oifense]; see, e.g., People v Gorman, 150 AD2d 797 [2d Dept 1989] *994 [defendant’s mistaken belief that dead victim was alive is not defense to a charge of attempted rape].)
The defendant’s contention that the People must prove that the victim was actually alive at the time the defendant forcibly obtained the property, regardless of when the defendant’s intent to rob was formed, is rejected. This court rules that if the defendant is unaware of the deceased’s condition, a conviction for robbery can be sustained if the defendant intentionally uses force to steal property from a person who is in fact dead.
INCONSISTENT VERDICTS
The robbery in the first degree conviction thus having been determined to have been supported by legally sufficient evidence, the second issue presented to this court is whether this conviction is inconsistent with the verdict acquitting the defendant of felony murder. An analysis of whether the verdicts are inconsistent requires an examination of the essential elements of each count submitted by the trial court to determine whether the jury’s findings on these counts can be reconciled. A verdict as to one count of a multicount indictment may only be set aside if it is " 'inherently inconsistent’ ” with the verdict on another count of the indictment. (People v Goodfriend, 64 NY2d 695, 697 [1984]; People v Tucker, 55 NY2d 1, 4 [1981].) The court determining whether verdicts are inconsistent may not speculate as to how the jury analyzed or weighed evidence nor may it examine whether the charge given by the trial court was accurate. The examination of the charge is limited to a determination of "whether the jury, as instructed, must have reached an inherently self-contradictory verdict.” (People v Tucker, 55 NY2d, at 7-8.)[4] The crucial concern is that the jury, in acquitting the defendant of one count of an indictment, has found that the prosecution has not proven at least one of the elements required for the conviction on the other count of the indictment. (People v Loughlin, 76 NY2d 804, 806 [1990]; People v Tucker, 55 NY2d 1, 6-7 [1981].)
In the instant case, the felony murder count required three elements to be proven: (1) that the defendant caused the death of another person; (2) that the defendant caused the death of *995 another person while in the course of and in furtherance of the commission of the robbery; and (3) that the victim was not a participant in the robbery. These elements are in addition to and distinguishable from the six elements of robbery in the first degree. Although both crimes require that the People prove, as an element, that the defendant intended to rob the victim, an additional element of felony murder required that the People prove that the intent to rob was formed before death occurred. Robbery in the first degree does not require that element.
In convicting the defendant of robbery in the first degree, the jury found that all six elements had been proven beyond a reasonable doubt. In acquitting the defendant of felony murder, the jury found that one or more of the three additional elements had not been proven. Therefore, the jury did not convict the defendant of a crime for which it had found that the prosecution failed to establish one or more of the required elements of robbery. (See, People v Loughlin, supra; People v Tucker, supra.) Consequently, the conviction of robbery in the first degree is not inconsistent with the acquittal of felony murder.
For the foregoing reasons, the defendant’s motion to set aside the verdict is denied.

. It is noteworthy that the general definition of a person in the Penal Law does not require that the person be alive. Penal Law § 10.00 (7) defines a person as "a human being.” This definition is both in contrast to and distinguishable from the definition of a person contained in article 125. Penal Law § 125.05 requires the victim of a homicide to be a human being who has been born and is alive.

. The instant case presents the question whether the evidence adduced was sufficient to demonstrate that force was used to prevent or overcome resistance to the taking of the property or retention immediately thereof and not whether force was used to compel the delivery of the property. (See, Penal Law § 160.00.)

. This court bases its decision on statutory construction of Penal Law § 160.00 and, to that extent, has considered the analysis of courts of other jurisdictions which have upheld robbery convictions concerning dead victims. However, these rulings have relied either on interpretations of the respective State statutes or on a "continuous transaction” theory. Neither analysis is controlling in the instant case. (See, e.g., United States v Butler, 455 F2d 1338, 1339, n 1 [DC Cir 1971] ["It is settled law of the jurisdiction that a dead man is a 'person’ within the robbery statute”]; Frady v United States, 348 F2d 84, 106 [DC Cir 1965] [the taking of the victim’s wallet was robbery whether it was taken before or after he was murdered]; Carey v United States, 296 F2d 422, 426 [DC Cir 1961] [when the time interval between the injury causing death and the taking of the property is "so short * ** * it can hardly be said as a matter of law that the act of appropriation was not performed upon a 'person’ ”]; West v State, 463 So 2d 1048, 1055 [Miss 1985] [the fact that the murder occurred prior to the taking does not lessen the crime of robbery]; State v Myers, 230 Kan 697, 703, 640 P2d 1245, 1250 [1982] [taking of property three hours after victim was killed is a robbery "where the act of force and the taking of the property are so connected as to form a continuous chain of events”]; People v McGrath, 62 Cal App 3d 82, 86, 133 Cal Rptr 27, 29 [1976] [the fact that the victim may be dead when the property is taken "does not alter the character of the theft. It is sufficient for purposes of robbery * * * that the murder and taking be part of one continuous transaction”]; Cobern v State, 273 Ala 547, 550, 142 So 2d 869, 871 [1962] ["If the intervening time between the time of the murder and the time of the taking of the property formed a continuous chain of events, the fact that (the victim) was dead when (the defendant) took the property could not absolve the defendant from the crime of robbery”]; State v Coe, 34 Wash 2d 336, 341, 208 P2d 863, 866 [1949] [where the robbery and homicide were all part of the same transaction, "the fact that death may have momentarily preceded the actual taking of the property from the person does not affect the guilt of the appellant in the commission of the (robbery)”].)

. One reason to prohibit intrusion into the jury’s deliberative process is that the jury, in reaching its verdict, may have exercised mercy. (People v Tucker, 55 NY2d, at 7; People v Alvarez, 174 AD2d 489 [1st Dept 1991].)